*383
 
 Chief Judge Fuld.
 

 Three New York City unions, which represent public employees — sanitation men, teachers and supervisory school personnel — together with their leaders, were adjudged guilty of criminal contempt for striking in violation of the Taylor Law (Civil Service Law, § 200
 
 et seq.).
 
 The Supreme Court, New York County, acting pursuant to sections 750 and 751 of the Judiciary Law, imposed fines upon them in varying amounts which now total almost $500,000. The funds are in the possession of the plaintiff, County Clerk and Clerk of the Supreme Court of New York County, and have been claimed by each of the two defendants before us — the City of New York and the State. The plaintiff brings this suit for a declaratory judgment, asking the court to specify whether the City or the State ‘
 
 ‘
 
 is entitled to receive the fines imposed and paid ”.
 

 Section 210 of the Civil Service Law recites that “ [n]o public employee or employee organization shall engage in a strike, and no public employee or employee organization shall cause, instigate, encourage, or condone a strike.” Upon the failure of public employees or an employee organization to comply with an order of injunction, against the violation, or threat of violation, of the provisions of that statute, section 211 requires the
 
 “
 
 chief legal officer of the government involved ” to “ apply to the supreme court to punish such violation ’ ’ under section 750 of the Judiciary Law. The latter statute authorizes courts of record to punish for criminal contempt those guilty, among other things, of “ [w]ilful disobedience to its lawful mandate ” or “ [Resistance wilfully offered to its lawful mandate.” Section 751, which had formerly provided only for a maximum fine of $250 — as an alternative to imprisonment — for conduct proscribed by section 750, was amended in 1967 by the addition of a new subdivision, reciting, insofar as relevant, that punish
 
 *384
 
 ment for a public employee organization that engages in the sort of contemptuous conduct just described “ may be by a fine fixed in the discretion of the court ” (Judiciary Law, § 751, subd. 2, par. [a]; L. 1967, ch. 392). As indicated, the funds in the plaintiff’s possession represent the fines imposed pursuant to section 751.
 

 The court at Special Term, concluding that the City was entitled to the funds, granted summary judgment in its favor.. The Appellate Division unanimously affirmed the resulting judgment and granted the State leave to appeal to our court.
 

 At common law, all fines belonged to the crown or, in this country, to the state. (See, e.g.,
 
 Bryant
 
 v.
 
 Rich’s Grill,
 
 216 Mass. 344,
 
 348;
 
 see, also, 36A C. J. S., Fines, § 19, p. 460.) Constitutional or statutory provisions usually prescribe the application and disposition to be made of them. For example, the Legislature of this State requires that fines imposed for criminal violations and misdemeanors be paid over, in most instances, to local political subdivisions — in the City of New York to the finance administrator (N. Y. City Crim. Ct. Act, § 23) and elsewhere to the county or city treasurer (e.g., County Law, § 700; Second Class Cities Law, § 187; UDCA, §§ 2408-a, 2503), unless they become “ the property of ” local political subdivisions such as a “ town ” or “ village ” (e.g., UJCA, § 2021).
 
 [1]
 
 Similarly, a fine for civil contempt is required by statute to indemnify the aggrieved party,
 
 [2]
 
 although, in some instances, payment to the State is also directed (Judiciary Law, §§ 773, 779; see, also,
 
 King
 
 v.
 
 Barnes,
 
 113 N. Y. 476, 480).
 

 Since no “special provision” (Judiciary Law, § 796) has been made for the collection of fines imposed by a court of record for criminal contempt, section 791 of the Judiciary Law governs the disposition of such funds. Insofar as relevant, that section provides that the clerk of the court must issue a warrant “ directed to the sheriff of the county,” commanding him to col
 
 *385
 
 lect the fine -from the party upon whom it has been imposed and “
 
 to pay over the sum collected to the treasurer of the
 
 county.” (Italics supplied.)
 

 Criminal contempt of court, though it may be charged in a civil proceeding, has, as its name implies, criminal overtones.
 

 A fine for criminal contempt, we have declared, is.“ a punishment for the wrong in the interest of public, justice, and not in the interest of an individual litigant. * * * [T]hese con-tempts in their origin and punishment partake of the nature of crimes, which are violations of the public law, and end in the vindication of public justice ”.
 
 (People ex rel. Munsell
 
 v.
 
 Court of Oyer & Terminer,
 
 101 N. Y. 245, 248; see, also,
 
 Hornblower & Weeks
 
 v.
 
 Sherwood,
 
 307 N. Y. 204, 210 ;
 
 People ex rel. Stearns
 
 v.
 
 Marr,
 
 181 N. Y. 463, 466.) Just as in the case of crimes, a charge of criminal contempt is necessarily localized. Although the Supreme Court is a state-wide court, it is in a particular county that it issues “ its lawful mandate” (Judiciary Law, § 750) and finds guilty of criminal contempt those who willfully disobey or resist such mandates. Accordingly, as in the case of other criminal offenses, where fines imposed are payable to local subdivisions or to county or city treasurers, it is our view that fines for criminal contempt must,, under section 791 of the Judiciary Law, be deemed payable to the treasurer of the county in which the court imposing them is sitting.
 

 Actually, the State contends, not that section 791 is inapplicable but rather that, simply describing the procedure to be followed for the collection of fines, it contains not a “ single word with respect to the title thereto.” Certainly, nothing turns on that. Where statutes provide that fines are payable to a county or city treasurer, they rarely indicate the governmental body that is to receive title to them or for whose benefit they are to be applied. It seems clear that the ultimate recipient is the one to whom payment is to be made. Consequently, we need not in this instance look beyond the county treasurer — in New York City, its finance administrator
 
 [3]
 
 — to determine who is ultimately to receive the fines here involved.
 

 The State’s reliance upon the provisions of its Finance Law, covering the duties of county treasurers and other public officers
 
 *386
 
 with, respect to “ moneys belonging to the state ” (§ 122; see, also, § 121, subd. 3), is misplaced. Sections 121 and 122 come into play only after it is first established that the fines belong to the State; here, as shown, it is the City that is entitled to them, not the State.
 

 We have considered the other arguments for reversal and find them without substance.
 

 The order appealed from should be affirmed, without costs.
 

 Judge Burke, Scileppi, Bergán, Breitel, Jasen and Gibson concur.
 

 Order affirmed.
 

 [1]
 

 . Under the former Penal Law, fines could be imposed for but a few felonies; the new Penal Law, on the other hand, permits the imposition of a fine for all but class A felonies (§ 60.10, subd. 2, par. [c]; § 80.00; Preiser, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, pp. 162-163).
 

 [2]
 

 . In the present case, the contempt for which the fine was levied was coneededly criminal and the City, although it happened to be the employer of the striking workers, may not, and does not, claim the fines as an aggrieved party.
 

 [3]
 

 . In the City of New York, the function of the county treasurer is performed by the finance administration of the City,