BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF BUFFALO, NEW YORK, Respondent, v THOMAS PISA, Individually and as President of the Buffalo Teachers Federation, Inc., et al., Appellants.

Fourth Department, December 17, 1976

*Paul E. Klein* for appellants.

*Leslie G. Foschio, Corporation Counsel (Leslie Greenbaum* of counsel), for respondent.

MOULE, J. On September 6, 1976 prior to the commencement of the 1976 school year and in expectation of a strike by defendant, Buffalo Teachers Federation (BTF), plaintiff obtained an order directing defendants, BTF, Thomas Pisa, individually and as president of the BTF, and certain unnamed members of the BTF, to show cause why a preliminary injunction should not be issued enjoining defendants from, *inter alia,* causing, encouraging, authorizing or continuing a strike against plaintiff. This order also temporarily restrained defendants from engaging in a strike pending the hearing and determination of the motion for the preliminary injunction. Later that day, after personal service of this order upon defendants, the members of the BTF voted overwhelmingly to go out on strike the following morning.

Subsequently on September 16, 1976 after continued but futile negotiations to end the strike, a hearing was held to determine the motion for the preliminary injunction. Following oral argument a preliminary injunction was issued enjoining defendants from promoting or continuing any strike or work stoppage, from directly or indirectly interfering with plaintiff or its employees in the performance of its duties and from attempting to cause nonstriking employees to discontinue work by the establishment of picket lines. This order was also properly served by delivery of a copy to defendants' attorney.

Thereafter on September 17, 1976 plaintiff, pursuant to section 751 of the Judiciary Law, obtained a show cause order returnable September 20, seeking to punish the BTF and Pisa, its president, for criminal contempt arising out of alleged willful disobedience of the temporary restraining order and the preliminary injunction. Service of this show cause order was made upon both the corporate and individual defendant according to the terms of the order by delivery of a copy of the order to a person of suitable age and discretion at the principal business office of the BTF.

On September 20, 1976, the return date of this order,

defendants' attorney appeared and requested an adjournment for the purpose of preparing a defense. This motion was granted and the matter was adjourned to September 22. Later that same day plaintiff obtained a second show cause order, also returnable on September 22, in which it sought to punish 19 members of the BTF executive committee for criminal contempt arising out of their alleged willful disobedience of the temporary restraining order and the preliminary injunction. Service of this order was also made pursuant to its terms by delivery of two copies to a person of suitable age and discretion at the principal business office of the BTF.

On the return date of these two orders, defendants argued that the court lacked jurisdiction in each instance due to the failure to serve defendants personally. The court thereupon dismissed the contempt proceeding against the 19 members of the BTF executive committee. It refused, however, to dismiss the proceedings against the BTF and Pisa and subsequently found both defendants guilty of criminal contempt. Pisa was fined $250 and sentenced to 30 days in jail. The BTF was fined $50,000 for its contempt through September 24, 1976 and an additional $10,000 for each school day the strike continued after that date. By an order of a Justice of this court dated September 28, 1976 execution of the warrant of commitment against Pisa was stayed pending determination of defendant's appeal.

Upon that appeal we reversed the judgment of conviction solely on the ground that neither defendant had been personally served with the show cause orders commencing the contempt proceeding (Board of Educ. v Pisa, 54 AD2d 821). Our reversal, however, was without prejudice to the institution of a new proceeding upon proper service.

Thereafter on October 28, 1976 plaintiff commenced a new contempt proceeding by obtaining an order to show cause which was personally served upon both defendants the following day. On the return date of that order the parties appeared before the same Justice who had presided over the original contempt proceeding. Defendants immediately moved to have that Justice disqualify himself, asserting that they were entitled to a hearing before a Judge who had not previously determined the merits of the case. This motion was denied.

The parties thereupon stipulated into the record the entire transcript of the first contempt proceeding and agreed to the

admission of five additional exhibits.[1] Both sides then rested. Defendants were subsequently found guilty of criminal contempt and the court imposed sentences identical to those given in the original proceeding. It also provided that execution of the mandate of commitment against Pisa was stayed pending a determination of defendants' appeal.

We find no merit in defendants' contention that, in light of the Court of Appeals' decision in *Matter of Jefferson County Bd. of Supervisors v New York State Public Employment Relations Bd.* (36 NY2d 534), an imbalance has been created in the Taylor Law (Civil Service Law, art 14) which operates to deny public employees equal protection of the law. In that case the court held that upon a finding that an employer has failed to negotiate in good faith, the Public Employment Relations Board (PERB) is statutorily empowered only to direct that such negotiations take place and is not authorized to enforce its decision by compelling specific performance of the employment agreement negotiated by the parties.

Defendants' equal protection argument that the statutory prohibition against public employee strikes is not counterbalanced by any statutory authority to compel public employer performance is premised upon the conclusion that both public employees and public employers are members of the same "class" for purposes of the application of the Fourteenth Amendment. Although defendants contend that this single classification is mandated by the legislative scheme of the Taylor Law, they present no evidence in support of this conclusion and, absent this proof, they have not rebutted the strong presumption of constitutionality that attaches to all legislative enactments *(Fenster v Leary,* 20 NY2d 309; *Wiggins v Town of Somers,* 4 NY2d 215; *Matter of Toia v Regan,* 54 AD2d 46).

Defendants also contend that the application of the Taylor Law here is unconstitutional because the City of Buffalo must be considered a joint employer of defendants along with the board of education since the city is ultimately responsible for fixing and funding the annual budget of the board. Defendants contend that the issues of wages and funding are effectively removed from the bargaining process because the board is

---

1. These exhibits consisted of statistical compilations of teacher and student attendance during the strike, a letter from the State Commissioner of Education assuring plaintiff that no State aid would be lost because of the strike and the October issue of defendant BTF's official newspaper.

bound by the budget allotment provided by the city. This, according to defendants, results in a denial of their fundamental right to negotiate directly with all parties who have authority over the essential terms and conditions of employment (see *County of Ulster v CSEA Unit of Ulster County Sheriff's Dept.,* 37 AD2d 437).

Defendants again base the constitutional impact of this argument upon their conclusion that public employers and employees are members of but one legislative classification. Since this premise, however, has previously been rejected for want of substantiation, the issue becomes one of statutory and not constitutional dimension.

Under section 203 of the Civil Service Law public employees are given the right "to be represented by employee organizations to negotiate collectively with their public employers in the determination of their terms and conditions of employment." This right, however, is not without limitation. Thus subdivision 1 of section 204-a provides that every negotiated agreement concerning such terms and conditions of employment shall contain the following notice: "It is agreed by and between the parties that any provision of this agreement requiring legislative action to permit its implementation by amendment of law or by providing the additional funds therefor, shall not become effective until the appropriate legislative body has given approval."

The Legislature thus explicitly recognized that in certain circumstances the public employer's authority to enter a binding contract is subject to the overriding consideration of the appropriation of sufficient funds to finance the negotiated wages, salaries and funded programs. In view of the provision, the public employees' statutory rights to negotiate the terms and conditions of employment must likewise be limited. Thus in the instant case, while defendants have the right to negotiate with the board concerning wages and salaries, any subsequent agreement between the parties would always be subject to the city's eventual appropriation of sufficient funding. This does not operate unconstitutionally to deny or limit the public employees' right to negotiate since that right is a statutory creation which may be altered by subsequent legislative enactments.

Defendants also contend that the temporary restraining order and the preliminary injunction, the violation of which formed the basis for the subsequent contempt adjudications,

were invalid. With respect to the temporary restraining order defendants allege that there was no proper showing that such relief was justified. We have, however, examined the affidavit submitted in support of that order and find that it establishes that a strike by defendants was threatened and that if such strike occurred, irreparable harm would result. Under the terms of the Taylor Law, the mere threat of a strike is sufficient to warrant the grant of the temporary restraining order (see Civil Service Law, § 211). Nor was the alleged lack of factual allegations relating to the extent and irreparability of the harm fatal to the application. By its very nature a strike by public employees constitutes an "irreparable injury" to the public order and welfare (see *Rankin v Shanker,* 23 NY2d 111; *Kuntz v Newburgh Teachers Assn.,* 75 Misc 2d 389), and the issuance of a temporary restraining order under circumstances evincing a threat of such injury is clearly justified *(City School Dist. of City of Schenectady v Schenectady Fed. of Teachers,* 49 AD2d 395). Additionally, the accompanying affidavit filed in support of the order specifically alleged that the threatened strike would result in injury to the students as well as a disruption of the fundamental activity of the Buffalo school system. These allegations were corroborated by newspaper stories annexed to the affidavit which reported that both the BTF executive committee and the house of delegates had recommended that the teachers strike on September 7, 1976. Under these circumstances, the issuance of the temporary restraining order pending a hearing and determination of plaintiff's motion for a preliminary injunction was in all respects proper.

Nor do we find any merit in defendants' contention that the application for the preliminary injunction should have been denied. The record indicates and, in fact, defendants admit, that at the time of the issuance of that injunction the teachers were on strike. This strike constituted a violation of section 210 of the Civil Service Law and accordingly, the court was authorized to grant injunctive relief enjoining this violation (Civil Service Law, § 211; *Goodman v State of New York,* 31 NY2d 381; *City School Dist. of City of Schenectady v Schenectady Fed. of Teachers,* 49 AD2d 395, *supra).*

Defendants' final contention relating to the propriety of these orders is that the enjoining language used by the court in each instance was overly broad and constituted an unconstitutional deprivation of defendants' First Amendment rights.

Section 211 of the Civil Service Law empowers a court to issue an injunction against "an act in violation of section two hundred ten of this article." The prohibited acts, as defined by section 210, are: (1) a public employee or employee organization engaging in a strike; and (2) a public employee or employee organization causing, instigating, encouraging or condoning a strike. These acts then form the basis for the scope of the injunctive power.

In the instant case both the temporary restraining order and the preliminary injunction sought to enjoin defendants from, *inter alia,* (1) causing, instigating, encouraging or condoning a strike; (2) directly or indirectly interfering with plaintiff or its employees thereby preventing the performance of their duties; (3) attempting to cause plaintiff's employees to discontinue work, whether by the establishment of picket lines or otherwise; and (4) interfering with the operation, maintenance or property of the Buffalo Public School System.

To the extent that those orders sought to enjoin activities not specifically prohibited by section 210 of the Civil Service Law, they were overly broad and, were the orders still in effect, they would be subject to modification. However, at the present stage of the proceedings, inasmuch as the strike has ended and the effect of the orders has terminated, the issue of the validity of each injunctive mandate is rendered moot. On this appeal we are concerned with the validity of these orders only insofar as they form the basis for defendants' conviction of criminal contempt. Since the fact that the orders were qverly broad did not render them void upon their faces, those orders had to be obeyed, no matter how erroneous, so long as the court was possessed of jurisdiction *(City School Dist. of City of Schenectady v Schenectady Fed. of Teachers,* 49 AD2d 395, *supra;* see, also, *Bachman v Harrington,* 184 NY 458; *Ketchum v Edwards,* 153 NY 534; *Baksi v Wallman,* 272 App Div 752; *Matter of Landau,* 230 App Div 308, app dsmd 255 NY 567).

Having dismissed defendants' general arguments relating to the constitutionality of the Taylor Law and having affirmed the basic validity of the temporary restraining order and the preliminary injunction, we turn to defendants' contentions concerning the contempt adjudication. Defendants initially argue that they were denied their right to a fair trial upon the institution of the new contempt proceeding, since the second hearing was conducted before the same Justice who

had presided over the first hearing and who had previously evaluated the evidence and found defendants guilty. Defendants further assert that the Justice improperly denied their motion that he disqualify himself and that the record of the new hearing establishes actual bias and prejudice. Upon the same facts as were presented on the original trial the Justice adhered to his original determination and there was no claim made that he was biased or prejudiced on the first trial. In addition, there had been no review of the merits of his first determination.

The sole reason advanced for disqualification was that the court's decision in the first trial "was in error on the substance as well as the procedure." The Trial Justice responded that he "would like to make it clear for the record, too, that this court has no personal prejudice or bias in the matter. Whatever determination the court makes now will be based on what the court considers to be the pertinent applicable facts of the matter and not the result of any pre-disposition or personal feelings against the defendant individually or the Buffalo Teachers Federation."

We find appellants' argument to be without merit. It is well settled that "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case" *(United States v Grinnell Corp.,* 384 US 563, 583). The principle was also succinctly stated in *Lyons v United States* (325 F2d 370, 376, cert den 377 US 969), "The section [disqualification] is directed to personal bias, which means an attitude of extrajudicial origin. A mere showing of prior judicial exposure to the present parties or questions will not invoke the section [citing cases]". We deem the allegation frivolous. (See, also, *People v Horton,* 18 NY2d 355; *Barry v Sigler,* 373 F2d 835, 836; *Lyons v United States, supra; Keown v Hughes,* 265 F 572, 577.) Additionally, it has been held that, even in the event actual bias does exist, that alone does not necessitate reversal, unless the record indicates that the Justice's decision was based upon such bias and not upon an impartial consideration of the evidence *(Matter of Rotwein,* 291 NY 116, 123).

In the instant case, the Justice's sole prior connection with this proceeding, and the only link upon which a finding of bias or prejudice may be based, was that he had presided over the previous hearing and had found defendants guilty of con-

tempt. This alone, however, does not necessitate disqualification or warrant reversal on appeal (see, *Fry v Bennett,* 28 NY 324, 328). Nor do we find any evidence of such bias in the fact that he found defendants guilty a second time and imposed the same sentences. The record of the second proceeding indicates that defendants, although repeatedly urged by the court to do so, failed to present any new evidence in opposition to the board's proof of contempt or in support of their plea for less severe penalties. Finally, the mere fact that the court in its second decision employed similar language to that used in its first decision does not, in our opinion, evidence any predisposition to decide the case in the same manner as before and we find defendants' arguments to the contrary to be unpersuasive.

Defendants also contend that with respect to defendant Pisa, the evidence adduced at the hearing failed to establish his guilt beyond a reasonable doubt. Pisa was ultimately found guilty of contempt for failing to take any affirmative action to rescind the strike recommendations made by the executive committee and the house of delegates of the BTF even though he had authority to do so and was directed by the court to do so; for insisting that the preliminary injunction would not be complied with until he negotiated BTF demands with the Mayor of Buffalo; and for making certain statements on a locally televised broadcast to the effect that the strike would continue until BTF demands were acceded to by the board.

The record indicates that Pisa had notice of the issuance and scope of both the preliminary injunction and the temporary restraining order. He also had by virtue of the constitution and by-laws of the BTF the authority to convene the executive committee in order to rescind the strike recommendation of that body. However, the undisputed testimony of the BTF's presidential assistant, a member of the executive committee, was that he was unaware of any activity undertaken either by Pisa or the committee as a whole to comply with the court's orders. Furthermore, the stenographic transcript of a meeting between Pisa and the Mayor of Buffalo indicates that Pisa categorically stated that there could be no compliance with the court orders until negotiations were conducted with the City of Buffalo. Finally, Pisa's remarks made during the course of a local television program clearly established that the strike would continue until at least some of the teachers'

demands were acceded to. In light of this the court's finding that Pisa was guilty of criminal contempt was adequately supported by the evidence.

Defendants' final contention relates solely to the severity of the sentences. With respect to defendant Pisa the $250 fine and the 30-day sentence of imprisonment were within the limits provided for in section 751 of the Judiciary Law. Inasmuch as the imposition of such sentence was within the sound discretion of the trial court, we should not reverse absent a clear abuse of that discretion *(Troutman v Arthur Murray, Inc.,* 55 AD2d 836; *Siegler v Massachusetts Acc. Co.,* 255 App Div 1031). We find no such abuse.

With respect to the fine imposed upon the BTF, defendants argue that the court erred in failing to consider the uncontradicted evidence relating to the board of education's extreme provocation and in failing to assess properly the impact of the strike upon the public health, safety and welfare of the community. We disagree.

In fixing the amount of a fine against an employee organization, section 751 (subd 2, par [a]) of the Judiciary Law specifically provides that "the court shall consider all of the facts and circumstances directly related to the contempt, including, but not limited to: (i) the extent of the wilful defiance of or a resistance to the court's mandate (ii) the impact of the strike on the public health, safety and welfare of the community and (iii) the ability of the employee organization to pay the fine imposed".

That section goes on to state that "the court *may* consider (i) the refusal of the employee organization or the appropriate public employer * * * to submit to the mediation and fact-finding procedures * * * and (ii) whether, if so alleged by the employee organization, the appropriate public employer or its representatives engaged in such acts of extreme provocation as to detract from the responsibility of the employee organization for the strike." (Emphasis supplied.)

Contrary to defendants' contention, the court was not statutorily required to consider the issue of extreme provocation in fixing the fine against the BTF. The use of the word "may" clearly indicates that the evaluation of this factor was within the discretion of the court.

In the instant case the court specifically noted in its decision that it had carefully reviewed the evidence relating to defendants' claims of extreme provocation and found their

contention to be unsupported. Since the analysis of this issue was discretionary, our review is limited to whether the court clearly abused that discretion, and based upon the record we find that it did not.

Nor do we find any error in its assessment of the impact of the strike upon the public health, safety and welfare of the community. The court justifiably found that the strike in this case deprived the school children "of the services of the Federation from September 7 to September 26 and that such deprivation resulted solely from the defendants' calculated illegal actions."

Defendants are correct in noting that the court was mathematically incorrect in stating that approximately two thirds of the Federation's annual dues collection was retained for local purposes. The record indicates that of the $520,000 collected annually approximately $220,000 is retained by the local organization for its own use. This error, however, does not require either reversal or modification of the fine against the BTF. Since the amount of such fine is by statute within the discretion of the trial court and since the record fully supports the conclusion that the BTF openly and intentionally disregarded the injunctive order of the court, we find no abuse of that discretion even with respect to the reduced local share of the annual dues. The orders and judgment should be affirmed.

DILLON, J. (dissenting). That the judiciary must respond sternly to willful and contumacious violations of its orders cannot be questioned. To do less would be to abrogate our constitutional and statutory duty. In the posture in which this appeal is presented, however, we are restrained from the exercise of that duty.

The majority today place the stamp of legal approval on the retrial of a criminal case by the same trier of fact who once before found the defendants guilty beyond a reasonable doubt on the identical criminal charge arising from the same circumstances. This holding is unprecedented. None of the cases cited by the majority or by the parties bears any direct relationship to the crucial issue before us. In my view, this lack of precedent is occasioned by the obvious defect in the proceeding. The simple truth is that it just isn't done.

The rationale upon which the majority conclusion is founded is faulty not only because it invites the appearance of bias in the administration of justice, but even more compel-

lingly, because it permits a deprivation of liberty and property without due process of law (US Const, 5th and 14th Amdts; NY Const, art I, § 6).

The Sixth Amendment of the Federal Constitution guarantees a trial of a defendant "by an impartial jury". While it is true that this case involved a Judge as the fact finder rather than a jury, I can find no distinction in law or logic which would sustain the application of any different standard. Surely we would not affirm a judgment of conviction on the retrial of a criminal charge where the verdict was rendered by the same jury which had found the defendant guilty on the first trial. We would unhesitatingly hold that the defendant was deprived of "a fair trial by a panel of impartial, 'indifferent' jurors" *(Irvin v Dowd,* 366 US 717, 722).

In my view, we have before us the commission of grave constitutional error. In such circumstances we are bound by the language of the Court of Appeals: "Not only the individual defendant but the public at large is entitled to assurance that there shall be full observance and enforcement of the cardinal right of a defendant to a fair trial. The appellate courts have an overriding responsibility, never to be eschewed or lightly to be laid aside, to give that assurance. So, if in any instance, an appellate court concludes that there has been such error of a trial court * * * or such other wrong as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction. The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right." *(People v Crimmins,* 36 NY2d 230, 238.)

Thus I find it unnecessary to review what may well be substantial evidence of the guilt of the defendants. Upon reversal of the first contempt adjudication on jurisdictional grounds and our direction permitting a trial *de novo (Board of Educ. v Pisa,* 54 AD2d 821), and upon the reassignment of the same Trial Judge to preside at the new trial, the defendants immediately moved for his disqualification. The motion was made, and denied, before any evidence was heard or received. The defendants argue, and I agree, that the prior finding of guilt is a sufficient showing of bias to support the disqualification.

I would reverse the judgment and grant a new trial before a different Judge.

MARSH, P. J., GOLDMAN and WITMER, JJ., concur with MOULE, J.; DILLON, J., dissents in an opinion and votes to reverse the judgment holding defendants in contempt and grant a new trial.

Orders and judgment affirmed, without costs.