*606 OPINION OF THE COURT
Herbert Shapiro, J.
In this action for an injunction, the plaintiff, New York City Off-Track Betting Corporation (OTB), seeks a preliminary injunction enjoining Local 2021 of District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO, its officers and members who are employees of the plaintiff from in any manner interfering with or interrupting the normal course of OTB’s business the union to instruct all members not to engage in any strike, concerted stoppage of work or a slowdown against OTB.
Before reaching the questions raised by the instant application it might be well to review some of the events which led to this lawsuit.
On June 30, 1978, the contract between OTB and Local 2021 covering OTB employees expired. Negotiations were thereafter held by the parties commencing in or about September, 1978. Despite such negotiations no new agreement has as yet been reached.
One of the factors which played a part in the failure to reach agreement was the dispute which arose between the OTB head, Bernard Rome, and Mayor Koch over the "casino gambling” issue. As a result of such dispute, it was announced that Mr. Rome would be removed and that John Keenan was "designated” to succeed him effective April 9, 1979.
Robert Palumbo, the Director of Industrial Relations for OTB, apparently took the position that Rome was still in command, while the city authorities insisted that any negotiations on behalf of OTB could only be conducted by Keenan. As a result the negotiations were discontinued.
The union became dissatisfied with this "impasse” and a special union meeting was called for March 26, 1979 for the announced purpose of recommending that round-the-clock negotiations commence the following day.
At the meeting, however, a number of the union members called for a strike. At this point there is a conflict as to what then transpired. The plaintiff contends that there was a strike vote taken which approved a strike and that the officers of the union supported such action. On the other hand, defendants deny that a strike vote was taken.
While there is a sharp factual conflict as to what took place at the union meeting of March 26, it is the view of the court— *607 as hereinafter discussed — that a resolution of such factual dispute is not required and that the instant application can be determined without a hearing for such purpose.
Similarly there is a sharp factual conflict as to what occurred on the morning of March 27. The plaintiff claims that the bulk of the employees did not report for work and that picket lines were set up at the OTB offices. The union, however, contends that its members reported for work but were, in effect, "locked out” by the plaintiff.
Again, as indicated with respect to the issue as to whether a strike vote was taken, it is the view of the court that no resolution of the factual issue of whether there was a "lock out” is required.
Looking now to the merits of the application, there appears to be no question but that the provisions of article 14 of the Civil Service Law (commonly known as the "Taylor Law”) are applicable to this case.
OTB is a public benefit corporation organized pursuant to chapter 254 of the Laws of 1940, as amended. Section 1 of chapter 144 of the Laws of 1970 (Pari-Mutuel Revenue Law, § 76, subd 1) provides that OTB "shall administer its personnel pursuant to the civil service law * * * and all other applicable provisions of local or general laws relating to civil service personnel.” Subdivision 6 of section 201 of the Civil Service Law (a section within the Taylor Law) defines "public employer” as, inter alia, "any other public corporation * * * which exercises governmental powers under the laws of the state.” A study of the statutory scheme establishing OTB leaves no doubt but that OTB is a public corporation exercising governmental powers sufficient to satisfy the statutory definition.
Section 201 (subd 7, par [a]) of the Civil Service Law defines a "public employee” — with exceptions not here applicable — as one employed by a "public employer”.
It having been concluded that the Taylor Law is applicable, it now remains to be determined whether the union and its members have violated that law.
Subdivision 1 of section 210 of the Civil Service Law provides that "[n]o public employee or employee organization shall * * * cause, instigate, encourage, or condone a strike.”
At this time, there is no question but that the OTB employees are on strike and that a formal strike vote was taken *608 and approved on March 30, 1979. That fact is admitted in the affidavit of Benedict Galante, a member of the union bargaining committee, submitted in behalf of the defendants. While admitting the subsequent strike vote, the defendants, in effect, argue that such strike vote is not a violation of the Taylor Law because it was precipitated by the "lock out” of March 27.
Assuming, arguendo, that there was indeed a "lock out” on March 27, such fact would not constitute a justification for the strike as to exempt such strike from the provisions of the Taylor Law. First, the Taylor Law contains no such "defense” and the clear proscription against a strike by public employees may not be so avoided. Second, even if there had been a "lock out” or other improper conduct on the part of OTB, such violation of the employees’ rights could be vindicated under the remedies provided by the Civil Service Law. The calling of a strike, however, is not one of the remedies provided. (Kuntz v Newburgh Teachers Assn., 75 Misc 2d 389.)
As a result, it is of no consequence as to whether there was a lock out or whether a strike was called by virtue of the meeting of March 26 and no hearing is required to resolve those factual issues. The proof is that the employees are now on strike.
It has also been suggested that the functions of OTB are not involved with critical areas of public service such as health, safety and education. That may be so, but the Legislature has not left it for the courts to determine whether in a given instance the "public services” involved are of a critical or noncritical nature and to then find Taylor Law violations only with respect to those striking employees performing critical services. The clearly expressed intent of that law is that its proscriptions apply to all public employees irrespective of whether they render "critical” services. What the Legislature has said, in effect, is that any strike by a public employee "constitutes an 'irreparable injury’ to the public order and welfare” (Board of Educ. v Pisa, 55 AD2d 128, 134).
Accordingly, the motion by plaintiff is granted. Settle order.
As indicated, the failure to reach agreement on a new contract and the dissatisfaction of the union members may have stemmed in part from the impending change in OTB leadership and the interregnum which will terminate with Mr. Keenan’s appointment on April 9, 1979. It is to be hoped that prompt compliance with the order to be entered herein *609 and Mr. Keenan’s assumption of leadership on April 9, 1979 will permit the expeditious resumption of negotiations and an ultimate settlement.