■ LUDWIG KLEIN, Petitioner, v JOHN T. O'HAGAN, as Commissioner of the New York City Fire Department, et al., Respondents.—Determination of respondent-respondent fire commissioner, made on or about August 26, 1977, adjudging petitioner-appellant to have violated rules and regulations of the New York City Fire Department and imposing sanctions thereon, annulled, without costs, on the law, and the matter remanded to respondent-respondent for further proceedings not inconsistent herewith. Petitioner-appellant, a departmental medical officer, was charged with violation of the department's rules and regulations in that he had disobeyed the order of a departmental officer to proceed to a hospital to examine an injured fireman. We do not reach the question of substantiality of the evidence against petitioner even though there are indications in the record that what was involved was a matter of petitioner's professional judgment. (Cf. *Rosenblum v O'Hagan,* 68 AD2d 847.) We do find that, regardless of whether the evidence was sufficient, petitioner was not accorded administrative due process at his hearing, requiring remand and hearing anew before a different hearing officer. Petitioner alleges that, after the first session of the hearing, as he was engaged in putting in a telephone call from a room adjacent to the hearing room, he overheard a conversation between the hearing officer and the departmental prosecutor. The latter is said to have made several statements to the hearing officer to the effect that departmental medical officers were not needed, that they were lazy, that they were paid too much, and that they cheated the taxpayers, to which disparagement the hearing officer is said to have agreed. Assuming that this had occurred, the hearing officer's disqualification would necessarily have been required, not alone because of an indication of bias, but because of consideration of factors dehors the record. (See *Matter of Avery v Rechter,* 56 AD2d 963; cf. *Matter of Simpson v Wolansky,* 38 NY2d 391.) At the next session, petitioner presented his affidavit requesting retirement of the hearing officer, based on a recital of the foregoing. The officer did not deny the occurrence; he denied only that he had any recollection of it, which in itself left open the question of its having occurred. Propriety called for a hearing on the subject, before another officer. However, the accusation was summarily brushed off and a direction given to continue the hearing. These circumstances call for the disposition we have made. Quite obviously the disqualification here discussed is not based on any statute nor is it based on bias either against a person or a class. But the expressions made to the hearing officer which he is said to have approved go to the very merits of the matter

he was called upon to adjudicate. This medical officer was charged with what in effect was failure to perform an assigned duty, of the very same nature of the general expression of disparagement concurred in by the supposedly impartial trier of the fact. (See *Matter of Rotwein [Goodman]*, 291 NY 116, 123.) If indeed the expressions were as described, they should not even have been listened to, let alone approved. The very appearance of impropriety is to be avoided by anyone performing the judicial function, even though only having the title of hearing officer. Concur—Sullivan, J. P., Bloom, Lane and Markewich, JJ.

Silverman, J., dissents in a memorandum, as follows: I would confirm the fire commissioner's determination. There is substantial evidence to support the hearing officer's and fire commissioner's determination. As to the question of the hearing officer's disqualification, I think the majority of the court is applying stricter standards with respect to this administrative officer than are customarily applied in determining the disqualification of a Judge or quasi-judicial officer. To begin with, if a charge of prejudice or disqualification is made with respect to a Judge, that Judge must decide for himself whether he is disqualified without referring the question whether or not he is disqualified to some other Judge for determination. In the present case, the hearing officer decided he was not disqualified. Further, when, three weeks after the alleged conversation between the prosecuting officer and the hearing officer, that alleged conversation was called to the hearing officer's attention, the hearing officer stated that "I have no recollection of any conversation in respect to this." This is surely a common, courteous method of asserting a negative. The usual way we "recollect" a negative is that we do not recollect the affirmative. This statement by the hearing officer was coupled with the statement, "I can sit on this case because I have not prejudged anything here. My decision will be based solely upon the evidence as it is presented". These statements made orally when the matter was first called to the hearing officer's attention were essentially restated by him in his decision. The statement alleged to have been made by the prosecuting officer to the hearing officer, and with which the hearing officer is alleged to have agreed, was to the effect that medical officers do very little work, are lazy, are overpaid and are not needed. Such general statements were statements of general opinion and do not disqualify a Judge or quasi-judicial officer. It is only statements or feelings of prejudice with respect to the particular case or parties before him that disqualify a judicial officer. General opinions do not disqualify such an officer so long as they do not prejudice him with respect to the particular case, and he feels that he can decide the particular case impartially on the basis of the evidence before him. One can think of many statements made by Judges which are far closer to the issues in cases before them and which do not disqualify them. Thus, Judges have referred to the danger of police officers tailoring their testimony to avoid constitutional limitations on search and seizure; that " 'Dropsy' cases have been criticized frequently as attempts to legitimize searches and seizures otherwise illegal" *(People v Quinones,* 61 AD2d 765, 766); that "There is no form of proof so unreliable as recanting testimony." *(People v Shilitano,* 218 NY 161, 170.) Judges may feel that the incidence of corruption among police officers, or building inspectors or other classes of civil servants, or buyers of supplies for large companies, or the incidence of tax cheating, was or is distressingly high. Judges may have and express views as to the poor maintenance of the city streets and the enormous number of potholes which may cause accidents. There is the apocryphal story of the Trial Judge who said that he had spent most of his career on

the bench trying cases involving collisions between two automobiles parked on opposite sides of the street and each still so parked when the other car collided with it. Or again to refer to a topic much in the public mind these days, Judges have expressed their views as to the extent of racial discrimination and as to whether affirmative action programs have gone too far or not far enough. And none of these expressions of opinion disqualify a Judge even in a case in which these issues may be involved, provided that he feels that he can be impartial in the particular case before him, as this hearing officer said he could be, and as there is no evidence that he was not. As I read them, the authorities support the position I have taken as to disqualification. We are not dealing here with direct, personal or property interest of the Judge in the case, or direct relationship to the parties, such as is prohibited by section 14 of the Judiciary Law (even though that statute does not apply to quasi-judicial administrative officers). (See *State Div. of Human Rights v Merchants Mut. Ins. Co.,* 59 AD2d 1054, 1056.) Rather we are dealing with a claim presumably of actual bias or prejudice. "It would be a sufficient answer to this claim that of an objection of that character, impropriety as distinguished from legal disqualification, the judge himself is the sole arbiter." *(People v Patrick,* 183 NY 52, 54.) In a case involving a charge of bias against a quasi-judicial administrative officer, the Appellate Division for the Fourth Department recently said: "But even if actual bias or prejudice had been shown, which it was not, it would not be grounds for disqualification. See *Matter of Rotwein* (291 NY 116) in which Chief Judge Lehman stated (p 123): 'Actual bias of the judge is not a ground for disqualification under Section 15 of the Judicial Law [now § 14].' (See, also, *People v Patrick,* 183 NY 52; *Matter of Fitzgerald v Wells,* 9 AD2d 812, app dsmd 9 NY2d 864.) Even though the bias or prejudice of a Judge does not work to disqualify him or deprive him of jurisdiction, after the determination of a case, if it is contended that the Judge was biased, such contention may be the ground of an appeal. In such case, 'the inquiry would be whether there was bias and if it affected the result to the detriment of the one claimed to have been aggrieved; if it did not exist, or if, existing, it did not unjustly affect the result, it would be no ground for a successful appeal.' (32 NY Jur, Judges, § 44.)" *(State Div. of Human Rights v Merchants Mut. Ins. Co.,* 59 AD2d 1054, 1056, *supra;* accord *Board of Educ. v Pisa,* 55 AD2d 128, 136.)