## (June 18, 1981)

■ In the Matter of EMANUEL C. AQUART, Petitioner, v TRIBC ₃OUGH BRIDGE AND TUNNEL AUTHORITY, Respondent. — Determination of respondent Triborough Bridge and Tunnel Authority (TBTA), dated November 30, 1979, dismissing petitioner as a bridge and tunnel officer, annulled, on the law, and the matter remanded for a new hearing, to be presided over by a hearing officer other than the one who has acted heretofore as such, without costs, and without disbursements. The charges against petitioner embraced misconduct in the manner of petitioner's operation of toll recording devices so as to misregister and nonregister vehicles passing through his toll lane, thus covering up misappropriation by showing a lesser collection of tolls than actually paid. This court annulled a prior finding of guilt (sub nom. Matter of Aquart v Schoepfer, 61 AD2d 900) and remanded for a second hearing, with the same result. The first annulment was based on a lack of "substantial evidence of a competent, probative force to sustain" the disposition. Particularly, we held (p 901) that the hearing officer should not have received the evidence given by two TBTA lieutenants which failed to exclude causative possibilities of the behavior of the recording mechanism "other than the petitioner's alleged fraudulent practices". Further, we were critical of consideration by the hearing officer of a "computerized statistical analysis" the purport of which was to demonstrate that the total collection during the time period covered was less than that projected. At the second hearing before the same hearing officer,[1] virtually identical evidence came from the same two witnesses, apparently in disregard of this court's above-mentioned characterizations on the earlier appeal. Were the sole question now before us whether this was error, we might possibly not disagree without dissenting brother's thesis that our earlier dissatisfaction with the evidence should fade in the face of the additional evidence adduced at the later hearing, videotapes corroborative, it is said, of the lieutenants' testimony. We need not face that question at this time because it is clear that sufficient error was committed, resulting in a deprivation of due process, to necessitate remand for yet another hearing. The same person who had presided at the first hearing was in charge at the second. This part-time hearing officer had already formed credibility and reliability judgments at the first hearing and, as indicated, had committed egregious error in the reception of improper evidence, as well as the inferences to be drawn therefrom. Considering the human condition, we note that it is difficult enough for long experienced Judges to block out a natural tendency toward self-justification by adherence to an opinion once formed.[2] How much more so for even the best intentioned occasional hearing officer! Nor are we impressed with the argument that, the officer having "resigned from his position * * * it is clear that his report was not influenced by any continuing subordinate relationship to

1. Actually, an assistant counsel — a position identical to that of the prosecutor — whose duties included sitting as a hearing officer when required. The authority's reason for not substituting another at the second hearing is that it had no other hearing officer.

2. "We too need education in the obvious — to learn to transcend our own convictions." Law and the Court, Oliver Wendell Holmes, Jr.

the Authority's counsel." The hearing officer's disqualification arises, not from diffidence toward his former superior, but primarily from the ancient sage observation that "a man convinced against his will is of the same opinion still." It must also be stressed in this regard that, the videotapes — certainly usable, but never offered, as direct evidence at the first hearing — could have had a potentially dangerous effect at the second in that they were corroborative, as far as the hearing officer was concerned, of his opinion theretofore formed on evidence characterized by the first annulling court as "incompetent," without benefit of having ever seen the tapes. This is not due process. Fairness should have dictated replacement by a new hearing officer at the later hearing. Concur — Murphy, P. J., Kupferman, Birns and Markewich, JJ.

Silverman, J., dissents in a memorandum as follows: I would confirm the determination dismissing petitioner. In our previous determination we held that the hearing officer should have excluded the "checkers' " testimony as it related to their observations of the overhead indicator, because the misregistrations or nonregistrations observed could have been attributable to a mechanical malfunction of which there was some evidence. That ruling was based on the record and testimony as it then stood. On the second hearing, further evidence, including video cassettes, was introduced, which properly satisfied the hearing officer as to the nature of the mechanical malfunction and that that malfunction did not affect the accuracy of the checkers' observations and count. The hearing officer found that the evidence "substantiated the existence of a classic pattern of intentional misregistrations" by petitioner, "a pattern of cheating," "a classic case of 'piano playing' * * * indicative of a well conceived, premeditated pattern of toll collecting injurious to the public weal and to the Authority." The evidence before the hearing officer substantiated these findings. As to the claim that this hearing officer should be disqualified because he had heard the previous evidence: The hearing officer's statement that he had not predetermined petitioner's guilt or innocence, and that he would accord petitioner a fair hearing should, like that of a Judge in similar circumstances, be final. *(Klein v O'Hagan,* 51 NY2d 784, revg 70 AD2d 514 for reasons stated in dissent at Appellate Division.) The hearing officer rendered a fresh, independent judgment on the present hearing. On the previous hearing, he had sustained each of the 33 specifications of charges against petitioner. On the present hearing, he sustained only 23 of the specifications, finding the others not sustained, either on the basis of his examination of the video cassettes, or for failure of proof. There was no evidence of actual bias or prejudice on the part of the hearing officer. Further, the hearing officer resigned from his position with the respondent authority during the course of the hearing so that it is clear that his report was not influenced by any continuing subordinate relationship to the authority's counsel.