Ester SZOKE, Plaintiff,

v.

Mack L. CARTER, Jr., Individually and as Commissioner of Hospitals for the County of Westchester, Jeffrey Sweet, Individually and as Assistant Personnel Director for the Westchester County Medical Center, Marilyn M. Corbett, Individually, Herbert Morris, Individually and The County of Westchester, Defendants.

No. 95 CV 1231.

United States District Court, S.D. New York.

Feb. 21, 1996.

---

35

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiff.

Theresa A. O'Rourke, Marilyn J. Slatten, County Attorney, Westchester County Law Dept., White Plains, NY, for Defendants.

PARKER, District Judge.

This action for the deprivation of Plaintiff's first amendment and property rights under 42 U.S.C. § 1983 is before the Court on Defendants' motion to dismiss plaintiff's third, fourth and fifth counts for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated below, Defendants' motion is granted in part and denied in part.

### Background

From February 1989 to August of 1991, plaintiff was employed by the County of Westchester as a senior lab technician in the Department of Pathology of the Westchester County Medical Center. In August of 1991, defendant Marilyn Corbett was first appointed as plaintiff's supervisor. Soon thereafter, Szoke began to express to Corbett her opinion that: there was systematic negligent failure of laboratory personnel to properly handle specimens, that specimens were being improperly discarded without proper record keeping, that PAP smear slides from several New York City agencies were being routinely received unlabeled, that by reason of improper handling of specimens, erroneous diagnoses were being given, that the working conditions in the "cytopreparatory area" of the laboratory were dangerous to health and safety, that laboratory staff and Corbett routinely violated and/or disregarded elementary safety requirements.

Apparently, Corbett's only reaction to Szoke's comments was her suggestion that Szoke resign. Szoke refused. Shortly thereafter, on December 20, 1991, Szoke expressed these same concerns to Dr. Myran Melamed, Chairman of the Department of Pathology. Melamed did not react. On January 30, 1992, Szoke again expressed these concerns to Stuart Newman, Chairman of the Biosafety Committee at the Westchester County Medical Center. Newman did not react. During the period from March to July of 1992, Szoke continuously repeated to Corbett some of the comments discussed above. Again, Corbett only reacted by chastising Szoke.

According to the complaint, defendants Corbett, Commissioner Carter and Assistant Personnel Director Jeffrey Sweet entered into a plan to prefer disciplinary charges against Szoke and ultimately have her fired in retaliation for her whistleblowing. The complaint alleges that the Medical Center had a long standing policy of retaliation against whistleblowers.

On June 16, 1992, Sweet prepared and Carter signed the first of two sets of disciplinary charges, accusing Szoke of insubordination. Carter then suspended Szoke without pay for thirty days. Sweet selected defendant Herbert Morris to be hearing officer. Morris, according to the complaint, had always determined guilty anyone charged in a disciplinary hearing. Moreover, the complaint alleges that Morris understood that Corbett, Carter and Sweet intended to terminate Szoke's employment. At the hearing, Corbett allegedly perjured herself.

On September 2, 1992, Szoke again expressed her concerns to Corbett regarding the unhealthful practices at the laboratory. On September 15, 1992, Szoke wrote to Carter, requesting that she be transferred to a different work site. In that letter, she reiterated her concerns about the safety of the laboratory and emphasized that the disciplinary charges were retaliatory and proximately the result of her having reported dangerous and unsafe conditions in the laboratory. Carter did not grant plaintiff's request.

On October 28, 1992, Sweet drafted and Carter signed a second set of charges against Szoke, again alleging insubordination. Morris then issued his report with respect to the first set of disciplinary charges, in which he found Szoke not credible. Soon after, Morris issued a second report, in which he found plaintiff not be credible, and then recommended that Szoke be fired. On January 15, 1993, Sweet drafted and Carter signed a letter terminating Szoke's employment.

Szoke makes five claims for relief, all under 42 U.S.C. § 1983, alleging that Defendants conduct: (1) violated her first amendment right to express herself on matters of public concern; (2) violated her first amendment right to petition the government for the redress of grievances regarding health and public welfare; (3) deprived her of due process rights by imposing a thirty day payless suspension in the absence of a pre-deprivation hearing; and (4) violated her due process rights in appointing the same hearing officer to preside over two disciplinary proceedings; and (5) deprived her of a her property interest in her job without due process. Before the Court is Defendants' motion to dismiss plaintiff's third, fourth and fifth claims pursuant to Fed.R.Civ.P. 12(b)(6).

*Discussion*

### A. Legal Standard

A complaint must be dismissed under Fed.R.Civ.P. 12(b)(6) only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); see also *Easton v. Sundram*, 947 F.2d 1011, 1014 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). In addition, in deciding a motion to dismiss, the court must read the facts alleged in the complaint "generously" drawing all reasonable inferences in favor of the party opposing the motion. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The trial court's role is to appraise the legal merits of the complaint and not to weigh the evidence which might be introduced at trial. See *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 124 (2d Cir.1991)

(plaintiff is not compelled to prove her case at the pleading stage). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Finally, the trial court should grant a Rule 12(b)(6) motion "only if is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02).

## B. Due Process

Plaintiff alleges that the disciplinary proceedings instituted against her by Defendants violated her due process rights. This attack on the Board's action has three prongs. First plaintiff alleges that defendants' actions deprived her of a property right by suspending her without pay, second plaintiff alleges that because Morris served as hearing officer at both hearings, he was biased, and third, plaintiff alleges that the existence of the hearing to be begin with violated her due process rights. We consider these contentions in turn.

### 1. Suspension without Pay

■ In her third claim, Szoke alleges that she was deprived of her right to due process when she was suspended without pay for thirty days. Due process requires a protected interest, in which a person has "a legitimate claim of entitlement." *Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972).

■ Relying on *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), Szoke claims that she had a property interest in her position, and that defendants' suspension without pay deprived her of that interest. In *Loudermill,* the Supreme Court held that a pre-termination hearing is required when a public employee with a definable interest in his position is dismissed. Defendants, for the purposes of this motion, do not contest Szoke's property interest in her position.

Rather, they dispute that she was deprived of that interest. They note that Szoke was not terminated from her position; she was suspended. The Supreme Court has never held that a public employee, even one with tenure or its equivalent, has a right to a hearing prior to a suspension. In fact, the Court found that where termination is a possibility, employees are not entitled to a full evidentiary hearing but rather only a minimal pre-termination proceeding. See *Weg v. Macchiarola,* 729 F.Supp. 328, 336 (S.D.N.Y. 1990); *Gates v. Sicaras,* 706 F.Supp. 169 (D.Conn.1989). Accordingly, this Court finds that Szoke was not denied due process when she was suspended without a hearing.

■ Moreover, although Szoke was suspended without pay, New York State Civil Service Law § 75(3) ensures a hearing within 30 days of the suspension and provides that an employee who has been acquitted of incompetency or misconduct will be restored to her position with full pay for the period of the suspension. While we might have reached a different conclusion if § 75(3) had not been the law, we find that the thirty day limitation and the guarantee of pay restoration adequately protects property interests of public employees. See *Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities,* 1994 WL 465993 at *7 (S.D.N.Y.1994) ("indefinite suspension of plaintiff without pay ... could reasonably be found to [be a deprivation] of [a] property right."). In this case, Szoke was provided her hearing within the thirty days. Accordingly we cannot say that Defendants' action with respect to her suspension deprived her of any property interest. See *Komlosi* 1994 WL 465993 at *8; but see *Murphy v. Wack,* 1991 WL 64193 (S.D.N.Y.1991).

### 2. Biased Hearing Officer

■ Szoke's fourth claim alleges that because Sweet and Carter designated Morris to serve as hearing officer in the first disciplinary hearing, he was biased in the second disciplinary hearing. Serving as a hearing officer in two hearings regarding the same individual is not *per se* a denial of due process. See *Snyder v. Farnsworth,* 896

**38**

F.Supp. 96 (N.D.N.Y.1995). Rather a plaintiff alleging a denial of due process must allege facts tending to show bias. *Snyder* 896 F.Supp. at 96; see also *Baxter v. Round Lake Area Schools,* 856 F.Supp. 438, 445 (N.D.Ill.1994); *A.S. Reynolds Electric Co. v. Goldin,* 161 A.D.2d 303, 555 N.Y.S.2d 79, 80 (1st Dept.1990). *Klein v. O'Hagan,* 70 A.D.2d 514, 415 N.Y.S.2d 866, 869 (1st Dept. 1979). Although, Szoke does not allege any facts which tend to show bias, we decline to dismiss her claim at this stage in the litigation.

### 3. Due Process

■ Szoke's fifth claim is that the hearing in general was a denial of due process. A fair and impartial tribunal, whether a Court or administrative agency, is a basic requirement of due process. *Withrow v. Larkin,* 421 U.S. 35, 46–47, 95 S.Ct. 1456, 1464–65, 43 L.Ed.2d 712 (citing *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955)); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Because this point has not been adequately briefed by either party, we decline to dismiss this claim at this time. Nevertheless, we do so with the understanding that these allegations may not pass Rule 11 scrutiny at a later stage in the litigation.

### CONCLUSION

For the reasons stated, Defendants' motion to dismiss Szoke's third claim is granted and Defendants' motion to dismiss Szoke's fourth and fifth claim are denied.

**SO ORDERED.**