**Susan RYAN, Plaintiff,**

v.

**Patrick J. CARROLL, et al., Defendants.**

**No. 98 Civ. 8858(CM).**

United States District Court, S.D. New York.

Oct. 5, 1999.

**358**

Jonathan Lovett, Lovett & Gould, White Plains, NY, for plaintiff.

Steven T. Sledzik, Miranda & Sokoloff, LLP, New York City, for Patrick J. Carroll, defendants.

### DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

This case, in which a probationary police officer with the City of New Rochelle alleges that her constitutional rights were violated in various respects in connection with her dismissal from the force, is before me on defendants' motion for summary judgment. Applying the well-settled rules governing such motions, *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gibson v. Amer. Broadcasting Companies, Inc.*, 892 F.2d 1128, 1132 (2d Cir.1989), the motion must be granted and the case dismissed.

### STATEMENT OF FACTS

The material facts are undisputed.

In this action brought under 42 U.S.C. Section 1983 and Article 78 of the New York Civil Practice Law and Rules, Susan Ryan, who was formerly a probationary police officer in New Rochelle, has sued Patrick J. Carroll and John Carboni, who are, respectively, the Commissioner and Deputy Commissioner of the New Rochelle Police Department, as well as the City of New Rochelle. During her term as a probationary officer, Ms. Ryan failed a random drug test administered by the Police Department as part of its routine screening for drug use. She tested positive for THC, the active ingredient in marijuana, based on a urine sample she gave on July 30, 1998. A retest of the same sample, by a different lab, also came back positive, although at a slightly lower level. By letter dated August 18, 1998, Commissioner Carroll terminated plaintiff's employment effective August 25, 1998. A letter of termination was placed in her file. The letter does not state the reason for termination.

Ms. Ryan adamantly insists that she did not use marijuana—indeed, she insists that she has never used marijuana at all, although she contends that it was administered to her without her consent during her youth. Furthermore, she found the results of the Department's test inconsistent with her then-current toxicological condition; she was taking barbiturates by prescription because she had suffered an injury in a recent fall, yet she tested negative for barbiturates. So when she learned of the results of the drug test, she went to great lengths to prove it false, both by having Quest conduct a subsequent urinalysis, and by submitting a sample of her hair to yet a third laboratory, Inter–City, for testing. Plaintiff deemed the hair test particularly significant, as it could show drug use going back many, many months, even years. Both tests conducted by plaintiff's chosen labs came back negative for THC, although Quest legended its results with the statement that the test could not be used for workplace drug testing purposes.

Ms. Ryan wrote a letter to Commissioner Carroll on September 17, 1999, asking him to reconsider her case. She attached to that letter the results of her hair analysis. The results did not include any documentation concerning the test procedures, controls or chain of custody of the sample. Nonetheless, Commissioner Carroll ordered Sgt. Fortunato, the head of Internal Affairs, to investigate the possibility that the Department's test was flawed. Sgt. Fortunato contacted various laboratories

and police departments regarding their use of hair testing and its validity and reported his results to the Commissioner, who declined to reverse his earlier decision and reinstate plaintiff.

Plaintiff instituted an Article 78 proceeding in the New York State Supreme Court, Westchester County, on October 30, 1999, just over two months following her termination. The petition did not challenge her discharge as arbitrary and capricious and contrary to law or seek to overturn it. Instead, plaintiff deliberately limited herself to trying to overturn Deputy Commissioner Carboni's decision to deny her worker's compensation benefits as a result of the aforementioned fall, which had occurred at the station house prior to commencement of her duty hours.

As part of its response to that petition, the City submitted an affidavit from Carboni, which chronicled the reason for plaintiff's dismissal from the force. The City contends that submission of this information was necessary so it could limit plaintiff's right to disability benefits to the period ending with her termination in the event Carboni's decision were overturned. Neither party sought to seal that portion of the record in the Article 78 proceeding, though either could have done so. The Court ultimately sustained Carboni's original decision and never reached New Rochelle's back-up argument that plaintiff lost her right to benefits as of August 25, 1998 because she was discharged for cause on that date.

On the last day of the four month period for commencing an Article 78 proceeding challenging her termination, plaintiff filed this action, in which she alleged the following causes of action: a first claim that defendants' public dissemination of her positive test results in connection with the termination of her employment violated plaintiff's substantive due process right to liberty in violation of 42 U.S.C. Section 1983; a second claim that defendants' deci-

sion to terminate her employment based on the allegedly erroneous test result violated her right to liberty and will result in compelled self-disclosure of the reason for her termination by plaintiff, again in violation of Section 1983; a third claim that Carboni's filing of the affidavit in the Article 78 proceeding was intended to retaliate against plaintiff for her having challenged their decision in her September 17 letter [1]; and a fourth claim for a declaration, pursuant to CPLR Article 78, that her dismissal was arbitrary and capricious and contrary to law. Following discovery, this motion for summary judgment followed.

DISCUSSION

The motion is granted for the following reasons:

1. Plaintiff's first claim for relief alleges that she was defamed by virtue of defendants' disclosure of her positive test results. Plaintiff argues that her substantive due process rights were violated by the wrongful dissemination of her test results, a stigmatizing disclosure made in connection with her dismissal.

 When a municipality makes stigmatizing accusations that impose a substantial disability on a probationary employee, that person's liberty interest may be affected. To establish that a liberty interest is affected, the plaintiff must show that the allegation was stigmatizing "plus" she must show that the statements at issue were at least arguably false. *See O'Neill v. City of Auburn*, 23 F.3d 685, 691 (2d Cir.1994). If she can make such a showing, then she will have a right to a name-clearing hearing, notwithstanding the fact that she has no property interest in continued employment. *See Codd v. Velger*, 429 U.S. 624, 628–29, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

In this case, it is undisputed that the allegation of testing positive for an illegal substance is stigmatizing to someone who is interested in doing police work. Indeed, plaintiff makes a persuasive case that it is

---

1. This claim was voluntarily discontinued.

virtually disqualifying. And plaintiff, by undergoing two additional drug tests, one of which allegedly had the capacity to detect drug use going back many, many months and both of which came back negative for THC, has certainly raised the at least arguable possibility that her drug test results were false. Therefore, for purposes of this motion, I will proceed on the basis that plaintiff had a liberty interest that could be violated if defendants made a wrongful and defamatory statement in connection with her termination.

■ Plaintiff submits that numerous persons knew why she had been terminated, and this Court has no doubt that numerous persons did. The question is whether plaintiff has offered any evidence that Commissioner Carroll or Deputy Commissioner Carboni advised anyone other than persons in their inner circle as to whom such a disclosure would be privileged,[2] of the reason why they had terminated plaintiff. The answer is no, plaintiff has offered no such evidence. Instead, she asks this Court to rule that a jury *could* conclude that the individual defendants were the source of the leak.

■ But of course a summary judgment motion cannot be defeated by speculation or conjecture. *See Western World Ins. Co. v. Stack Oil, Inc.* 922 F.2d 118, 121 (2d Cir.1990). As defendants note, some 19 persons, outside the circle of senior New Rochelle officials who had a "need to know," were deposed in this action. All became aware at some point of the nature of plaintiff's problem. Most asserted that this information was "common knowledge." Not a single one identified either of the defendants or members of their inner circle as the source of their information. Several swore that plaintiff herself had advised them of her adverse drug test results.

That someone talked about what should have been kept confidential information is indisputable. But the absence of so much as a shred of evidence indicating that Carroll or Carboni were the leakers—especially since there is ample evidence that plaintiff herself told any number of individuals—compels dismissal of this claim. The fact that the rumor about plaintiff's drug test was widespread proves nothing about who originated it. The record contains literally no evidence that defendants Carroll or Carboni or members of their inner circle made any statements to third parties concerning plaintiff's failure to pass her random drug test. There is, therefore, no basis for a jury to draw the inference that would allow plaintiff to prevail.

■ Plaintiff also claims that New Rochelle can be held liable to her for the leak, because someone obviously did it, and that person was a policy-maker who was acting on behalf of the City of New Rochelle in wrongfully leaking her drug test results. Plaintiff urges the Court to infer that the leaker was Sgt. Fortunato. As with the Commissioner and Deputy Commissioner, she offers no proof that Fortunato in fact discussed the drug test results with anyone who was not authorized to have the information. But if he did, it appears from this record that he was acting in violation of New Rochelle's employment policies, not in accordance with them. That alone would compel dismissal of the claim against New Rochelle under *Monell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), since there is no evidence that the leak was made pursuant to any policy or practice of the City of New Rochelle. Moreover, plaintiff has not offered any evidence to establish that either of the individual defendants or Sgt. Fortunato was in a position to make employment

**2.** Defendants have admitted discussing Ms. Ryan's case with an "inner circle" consisting of the Mayor of New Rochelle, the City's Personnel Director, the Corporation Counsel and one of his assistants, plaintiff's commanding officer, her union leader, and the Head of Internal Affairs, Sgt. Fortunato.

policy for the City of New Rochelle (as opposed to making individual employment decisions pursuant to policies set by someone else), so she is in no position to raise an issue of material fact with respect to her *Pembaur* argument, *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)—assuming such a claim could be argued where, as here, the alleged "policy" or "practice" is actually a violation of policy and contrary to practice.

2. Plaintiff's second claim is for violation of her right to procedural due process, although it is not formally denominated as such in the complaint. However, a contention that plaintiff was erroneously fired on the basis of a flawed drug test can only be read as a procedural due process claim, especially as the first cause of action is a substantive due process claim.

■■■ Of course, plaintiff, as a probationary employee, had no right to due process before losing her job. *See Finley v. Giacobbe,* 79 F.3d 1285 (2d Cir.1996). Since, as noted above, plaintiff has not put in any evidence that defendants wrongfully disseminated her drug test results in connection with her termination to anyone who was not privileged to learn of them, any right she might have had to a name clearing hearing under *O'Neill v. Auburn,* 23 F.3d 685, 691 (2d Cir.1994) never attached. This is because that right depends on a finding that *defendants* made stigmatizing disclosures about her that were at least arguably false. *See Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Poole v. Board of Trustees of Cayuga Community College,* No. Civ.A. 96–CV–0681, 1998 WL 661540 (N.D.N.Y. Sep.25, 1998); *Kennedy v. City of New York,* No. 94 Civ. 2886, 1996 WL 711505 (S.D.N.Y. Dec.10, 1996). There being absolutely no evidence that defendants made the stigmatizing disclosures complained of here, plaintiff's claim for a name-clearing hearing fails.

■■■ However, for purposes of this prong of the motion, let me assume (contrary to my prior ruling) that plaintiff had a right to a name-clearing hearing. Even if she did, her procedural due process claim lacks merit and must be dismissed. The State of New York provides a dismissed municipal employee with an avenue for clearing her name—a proceeding challenging her termination as arbitrary and capricious and contrary to law pursuant to CPLR Article 78. It is well settled that the availability of an Article 78 proceeding bars a municipal employee from maintaining a Section 1983 procedural due process claim. The availability of an adequate post-deprivation procedure for reviewing the propriety of the dismissal means that there has been no constitutional violation. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *HANAC v. City of New York,* 101 F.3d 877, 882 (2d Cir.1996). Indeed, Article 78 proceedings have been held to be adequate post-deprivation procedures, and they frequently function as name clearing hearings. *See, e.g., Blum v. Quinones,* 139 A.D.2d 509, 510, 526 N.Y.S.2d 611 (2d Dept.1988); *Merhige v. Copiague School District,* 76 A.D.2d 926, 927, 429 N.Y.S.2d 456 (2d Dept.1980).

Plaintiff argues, citing *Heck v. Humphrey,* 512 U.S. 477, 480, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that one need not exhaust one's state remedies before commencing a Section 1983 action. But that argument is misdirected. The issue here is whether a due process claim for effecting plaintiff's termination without due process of law exists under 42 U.S.C. § 1983 in the face of an adequate post-deprivation procedure. There is no such claim, because *Heck* did not purport to overrule *Parratt.*

■■■ Plaintiff's claim would fail in any event, because she has had a post-deprivation name clearing hearing within the meaning of the law. It is well settled that such a hearing need not comport with any particular procedural requirements;

for example, permitting a former employee the opportunity to send in letters and submit to an interview satisfies any constitutional due process requirements. *Baden v. Koch,* 799 F.2d 825, 831–32 (2d Cir. 1986); *Fleming v. Kerlikowske,* 1999 WL 307696 (W.D.N.Y. May 7, 1999). In this case, plaintiff notified the Commissioner, by letter, of her reasons for disputing the results of her drug tests, and offered countervailing evidence. The Commissioner considered that evidence; he ordered a subordinate, the Head of Internal Affairs, to investigate it and to report back to him. The subordinate did so, and the Commissioner decided to affirm his earlier decision. No doubt the evidence she submitted to the Commissioner was highly persuasive to plaintiff; it was less so to defendants. However, the fact that plaintiff's name was not cleared does not mean that she did not receive a name-clearing hearing. Neither does the fact that the Commissioner chose not to act on plaintiff's suggestion that he consult yet another toxicologist if the evidence she submitted did not suffice to change his mind—there being no requirement, at law or under the Due Process Clause, that the process due plaintiff take any particular form.

This leaves me with a claim challenging plaintiff's dismissal as arbitrary and capricious or contrary to law pursuant to Article 78—the very claim that should have forestalled this lawsuit in the first place. While it would be easy enough for me to dispose of this claim on the merits, I feel very strongly, as an institutional matter, that parties whose recourse is Article 78 ought not be encouraged to bypass the New York State Supreme Court, where such claims are rightfully brought. I therefore decline to exercise supplemental jurisdiction over this claim and remit plaintiff to her New York State forum.

This constitutes the decision and order of the Court