Robert E. WARE, Plaintiff,

v.

CITY OF BUFFALO; City of Buffalo, Department of Fire; Cornelius J. Keane, Individually and as Commissioner, Department of Fire; and John D. Sixt, Individually and as Deputy Commissioner, Department of Fire, Defendants.

No. 98–CV–0147C(M).

United States District Court, W.D. New York.

June 26, 2001.

Leigh E. Anderson, Esq., Buffalo, NY, for Plaintiff.

Michael B. Risman, Esq., Corporation Counsel of the City of Buffalo (Jeffrey E. Reed, Esq., Assistant Corporation Counsel, of Counsel), Buffalo, NY, for Defendants.

## INTRODUCTION

CURTIN, District Judge.

On March 3, 1998, plaintiff Robert E. Ware ("Ware"), a Buffalo firefighter, brought this action, pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the U.S. Constitution, Fed.R.Civ.P. 57, 28 U.S.C. §§ 2201, 1331, and 1343, and state law. Ware sought declaratory, monetary, and preliminary and permanent injunctive relief against defendants City of Buffalo; City of Buffalo Department of Fire ("Fire Department"); Cornelius J. Keane, individually and as Commissioner of the Buffalo Fire Department; and John D. Sixt, individually and as Deputy Commissioner, Buffalo Fire Department. Item 1. Ware alleges he suffered economic and personal damage as a result of being required to comply with the Drug Testing Policy (the "Policy") implemented by the City of Buffalo and the Fire Department. He further alleges that the Policy is arbitrary and capricious on its face, and as applied to him. Defendants answered on March 24, 1998. Item 2. On September 18, 2000, defendants moved pursuant to Fed. R.Civ.P. 12(b)(1), 12(b)(6), and 12(b)(7) for an order dismissing the complaint. Items 20, 21. Plaintiff responded with a Memorandum of Law in Opposition, Item 23, and defendants filed an Affidavit in Response. Item 25.

The court heard oral argument on January 5, 2001. In an order dated January 10, 2001, the court asked counsel to submit additional briefs on whether the union waived plaintiff's challenge to the Drug Testing Policy. Item 26. Plaintiff responded with a letter, Item 29, and defendants responded with a brief that contained as an exhibit a copy of the Collective Bargaining Agreement between the City and plaintiff's union. Item 28. For the reasons that follow, the court grants defendants' motion to dismiss.

## BACKGROUND

As alleged in the complaint, the facts are as follows. On December 29, 1997, plaintiff Robert Ware, a Buffalo firefighter, was directed to the Union Occupational Health Center ("UOHC"), where he was ordered to provide a urine sample for testing under

the Drug Testing Policy of the Buffalo Fire Department. Item 1, ¶ 24. With the consent of the union, this Policy had been implemented by the City of Buffalo and the Fire Department in June 1995. Item 1, ¶ 10; Item 1, Ex A. The Policy requires collection of at least 60 ml. of urine in order that the sample can be divided into two equal parts. The Policy also provides for a certain procedure to be followed if the employee is not able to pass that amount of urine. Item 1, ¶¶ 11, 12. Despite the Policy provisions, less than 60 ml. of urine was collected from Ware. The sample was reported positive for the presence of marijuana metabolite. *Id.,* ¶ 26. On January 5, 1998, plaintiff was informed by a UOHC physician that he had tested positive for drug use, and was advised to report to Deputy Fire Commissioner Sixt ("Sixt").

Later that day, Ware met with Sixt, in the presence of a union representative. During the meeting, Ware denied ever using drugs and argued that the test result was a mistake. He also informed Sixt that the urine sample had been too small to divide into two parts, a fact which Sixt acknowledged. *Id.,* ¶¶ 29, 30, 31. Despite the small sample size, which would not allow for a retest pursuant to the Policy (Article V(C)), Sixt told plaintiff that he would be treated as having been tested positive for illegal substances. Sixt placed Ware on suspension and told him to use his sick time and vacation time while on suspension. Sixt also told Ware that unless he entered and successfully completed the chemical dependency program at Beacon Center, he would be terminated as a firefighter. *Id.,* ¶¶ 32–34.

At approximately 5 p.m. on January 5, 1998, Ware went to the Beacon Center and provided a urine sample. The next day he went to a laboratory and gave a blood sample. Both samples reported negative for illegal substances. Although Ware advised Sixt that the additional drug tests were negative, Sixt refused to excuse him from attending the Beacon Center, and told him that if he did not complete the program, he would be terminated from his job. *Id.,* ¶¶ 36–38. As a result of his suspension, Ware missed one full tour of duty. Sixt then informed him that he could return to work. *Id.,* ¶ 39.

The Beacon Center program requires three weekly group counseling sessions, biweekly individual counseling sessions, urine testing each day the person is on site, and joint counseling with the attendee's spouse. The person must submit to a thorough physical examination, provide complete autobiographical materials, and attend Narcotics Anonymous and Alcoholics Anonymous meetings. *Id.* ¶ 45. Ware was told by the Beacon Center staff that if he refused any recommendation made by the Center, he would be reported to the Fire Department as non-compliant and would be terminated from the program. *Id.* ¶ 46.

On January 21, 1998, Ware was unable to attend an appointment at the Beacon Center because his wife's car was stolen and he had no transportation. His absence was reported to the Fire Department, and Sixt suspended him without pay, effective January 22, 1998. Later that day, the suspension was rescinded. *Id.,* ¶¶ 47, 48, 49. Ware, who also was a non-commissioned officer in the National Guard (*id.,* ¶ 41), informed the Beacon Center that he could not attend the program on January 30 and February 6, 1998, since it conflicted with National Guard drill weekends. By letter dated February 9, 1998, the Beacon Center informed Ware that his absences on those two days were unexcused, and threatened to discharge him from the program. On February 12, 1998, Sixt suspended Ware without pay for noncompliance with the Policy. The sus-

pension was subsequently revoked. *Id.,* ¶¶ 50, 52–55.

Sixt told Ware that Ware was required to sign waivers authorizing the Fire Department to obtain all records regarding his treatment at the Beacon Center or he would be terminated. Ware signed the releases. *Id.,* ¶ 60.

Ware contends that when he denied using drugs, he was told by the Beacon Center personnel that he was not complying with treatment and that he must admit his addictions in order to successfully complete the program. He asserted that he could not comply with the Beacon Center program unless he falsely affirmed that he had a drug problem. Ware also questioned why he had to undergo alcohol and marital counseling, which are not within the ambit of the Policy, but which the Beacon Center insisted he must undergo in order to be in compliance. *Id.,* ¶¶ 62, 63, 65.

As a result of being required to attend the Beacon Center, Ware claims he has suffered acute emotional distress, damage to his reputation, and severe depression and humiliation. *Id.,* ¶ 66. He has had to forego opportunities to see and care for his daughter, of whom he has joint custody. *Id.,* ¶¶ 43, 66. He was denied the opportunity to reenlist for another tour of duty in the National Guard because of its "zero tolerance" drug policy. He has also been denied security jobs at a security firm for which he works on a part-time basis; he has missed work as a teacher's aide, another part-time job; he lost a full tour of vacation while on suspension from his firefighting job; and he claims he has otherwise suffered severe economic and personal damages. *Id.,* ¶ 67.

The Policy does not provide any guidance concerning what specific recourse an employee may have if those responsible for taking samples do not follow the protocol. However, it does provide for a hearing prior to any imposition of discipline on the employee pursuant to section V(G). The Collective Bargaining Agreement, however, contains an elaborate series of procedures for a disciplined or discharged employee to follow, which includes written service and answer to charges, informal hearing, formal hearing, and appeal to either the Buffalo Municipal Civil Service Commission or the New York State Supreme Court via an Article 78 proceeding. Item 28, Ex. A, pp. 42–46.

Ware has alleged five causes of action in his complaint. The first three causes of action allege violations of federal law and the Due Process Clause of the Fourteenth Amendment: (1) the Policy is arbitrary, capricious, and impermissibly vague; (2) the defendants have applied the Policy to him in an arbitrary and capricious manner; and (3) the Policy's confidentiality provisions fail to protect plaintiff's rights to privacy regarding treatment at the Beacon Center. The fourth cause of action alleges violation of privacy under the state laws and Constitution, and the fifth cause of action alleges intentional infliction of emotional distress caused by the defendants who required Ware to attend the Beacon Center, despite their knowledge that it was causing him such distress, and who refused to expunge his records regarding the December 29, 1997 drug test and related matters.

The defendants have moved to dismiss plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(1), (6), and (7) on the grounds that (1) plaintiff has no standing to challenge the provisions of the Policy; (2) plaintiff fails to state a facial constitutional challenge to the Policy; (3) defendants City of Buffalo, City of Buffalo Fire Department, Fire Commissioner Keane, and Deputy Fire Commissioner Sixt, in their official capacities, are immune from punitive damages liability; (4) the court should decline to exercise jurisdiction over

the pendent state law claims since the federal claims should be dismissed; (5) defendant City of Buffalo Department of Fire has no capacity to be sued; and (6) plaintiff has failed to join a party necessary to just adjudication under Fed. R.Civ.P. 19. Items 20, 21.

## PRELIMINARY MATTERS

Because plaintiff concedes that dismissal is warranted against the Buffalo Fire Department as a separate entity (Item 23, pp. 5–6), the Fire Department is dismissed as a defendant.

Plaintiff explicitly agrees that punitive damages are not recoverable against municipalities in section 1983 actions, and impliedly agrees that punitive damages against Sixt and Keane, in their official capacities, cannot be recovered. Therefore, the court dismisses the punitive damages claims against the City of Buffalo, the Fire Department, and Sixt and Keane, in their official capacities.

Also, because the court has been unable to determine how defendant Keane, in his official or individual capacity, may have impinged plaintiff's federal rights since Keane is not mentioned in any cause of action in the complaint, the court dismisses him as a defendant.

## DISCUSSION

I. **Dismissal Pursuant to Fed.R.Civ.P. 12(b)(7) and 19, Failure to Join Indispensable Parties**

■ The analysis required by Rule 19 is well settled:

First, the Court must determine whether the absent party should be joined as a "necessary party" under Fed.R.Civ.P. 19(a). Second, if the court decides that the party is required but cannot be joined for practical or jurisdictional reasons, it must determine under Fed. R.Civ.P. 19(b) whether in 'equity and good conscience' the action should be dismissed because the party is 'indispensable'.

*Legal Aid Society v. City of New York,* 114 F.Supp.2d 204, 219 (S.D.N.Y.2000) (quotation and citations omitted). According to Fed.R.Civ.P. 19(a), a party is a necessary party if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*Id.* at 219–20 (quotation and citations omitted).

■ The court finds that Local 282 is a necessary party to this litigation under Rule 19(a). The union is subject to service of process, and its joinder will not deprive the court of jurisdiction. Further, in the union's absence, complete relief cannot be accorded plaintiff. The union and the defendant City were signatories to the Policy and the Collective Bargaining Agreement. As one of his claims for relief, plaintiff seeks a judgment declaring the Policy null and void. Obviously the union, as the bargaining representative of its members, has a great interest in the court's determination. The general rule is set forth in 7 Wright–Miller–Kane, *Federal Practice & Procedure* § 1620 (3d ed.2001) p. 313:

[T]he union may be found to be a party to be joined if feasible under Rule 19(a) in actions brought by employees against their employers requiring an adjudication that might have a significant impact on the collective-bargaining agreement

because of the union's interest in the operation of that contract.

See *Adams v. Delta Air Lines Inc.*, 1997 WL 12803 at \* 1 (S.D.N.Y.1997) (if the union has an interest in the validity and construction of the collective bargaining agreement which it negotiated and to which it is a signatory, its presence may be necessary to protect the rights of members not party to the action).

■ Upon finding that a person is necessary to an action and can and should be joined, federal courts have generally been reluctant to grant motions to dismiss pursuant to Rule 12(b)(7) on the grounds of nonjoinder. Instead, the court will order the absent party to be joined. In this case, the court finds that it would be futile and a waste of judicial resources to dismiss the action and permit filing of an amended complaint joining the union because the court dismisses the complaint on the merits on the grounds cited below.

## II. Standards

### A. Dismissal Pursuant to Fed. R.Civ.P. 12(b)(1), Lack of Subject Matter Jurisdiction, and 12(b)(6), Failure to State A Cause of Action

■ When a defendant moves for dismissal on the grounds that the court both lacks subject matter jurisdiction and failure to state a cause of action, "the court typically should address the jurisdictional question first." *Greene v. Hawes*, 913 F.Supp. 136, 140 (N.D.N.Y.1996). However, in a 42 U.S.C. § 1983 action, the two issues are often intertwined and "[i]t may be impossible ... to determine the jurisdictional issue without essentially determining whether a plaintiff has stated a cause of action." *Id.*

When a court is presented with a motion to dismiss under Rule 12(b)(6), the facts alleged by the plaintiff are assumed to be true and must be liberally construed in a light most favorable to the plaintiff. *Id.* at 141, citing *Easton v. Sundram*, 947 F.2d 1011, 1014 (2d Cir.1991). A complaint should not be dismissed for failure to state a claim unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994).

### B. 42 U.S.C. Section 1983 and Due Process Claims

■ Title 42 U.S.C. § 1983 serves as the basic vehicle for federal court review of alleged state and local violations of federal law. In order to state a claim upon which relief may be granted under section 1983, "a complaint must allege that the defendants deprived the plaintiffs of a right secured by the Constitution or laws of the United States and that such deprivation was committed by persons acting under color of state law." *Danese v. Knox*, 827 F.Supp. 185, 190 (S.D.N.Y.1993). A city is a state actor for purposes of section 1983. *Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

■ Courts engage in a two-step analysis when resolving procedural due process claims.

The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review. *See Mathews v. Eldridge*,

424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Narumanchi v. Board of Trustees of Ct. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988).

## III. Application

Four of plaintiff's five causes of action relate to the Drug Testing Policy. The first and third causes of action challenge the Policy as arbitrary and capricious on its face, in violation of the Due Process Clause; the second and fourth challenge the Policy as applied, in violation of the Due Process Clause and New York State laws and Constitution, respectively. The court will address the "as applied" challenge first.

### A. The Second Cause of Action: An "As Applied" Challenge to the Policy

Plaintiff's second cause of action charges that "The defendants have failed and refused to adhere to the Policy in applying it to the plaintiff," and have applied the Policy to him in an arbitrary and capricious manner in violation of the Due Process Clause. Item 1, ¶¶ 74, 75.

### 1. Was there a Cognizable Property Interest?

In a section 1983 action, as indicated in section II(B) above, the threshold inquiry is whether there has been a constitutionally cognizable injury. Any claim predicated on a violation of due process must involve the invasion and deprivation of a recognized life, liberty, or property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 570–72, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Narumanchi,* 850 F.2d at 72. Property interests subject to procedural due process protection are not created by the Constitution; rather, they are created and defined by "existing rules or understandings that stem from an independent source such as state law." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

The Supreme Court has held that "public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process . . . ." *Gilbert v. Homar,* 520 U.S. 924, 928–929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (citing *Roth,* 408 U.S. at 578, 92 S.Ct. 2701). Such an employee is "entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing." *Homar,* 520 U.S. at 928, 117 S.Ct. 1807 (citing *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 545–46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). While discharge from public employment qualifies as loss of a property interest and supports a section 1983 claim, courts analyze suspensions and the loss of job-related benefits more rigorously, and the results are not as uniform.

In this case, Ware was not terminated. The employment-related injuries he alleges are loss of a full tour of vacation time (Item 1, ¶ 67); loss of opportunities to see and care for his daughter, *id.* ¶ 66; denial of an opportunity to reenlist for another tour in the national guard, *id.;* denial of security jobs, *id.;* and missed work as a teacher's aide. *Id.* He also alleges that he was suspended on three occasions: (1) the first suspension caused him to miss one full tour of duty (Item 1, ¶ 39); (2) the second suspension lasted one day, January 22, 1998 (*id.,* ¶¶ 48, 49); (3) the third, which began Feb. 12, 1998, was subsequently revoked (*id.,* ¶¶ 54, 55). Plaintiff does not specify the length of the third suspension.

The property interest Ware has in his job as a firefighter does not implicate any constitutional right to work at his additional teacher's aide, national guard, or security guard jobs. Also, his right to see his daughter is not a constitutionally protected

interest under section 1983. To have a property interest requires a legitimate claim of entitlement that arises from an applicable statute, contract, or regulation that establishes the benefit. *Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 29 (2d Cir.1994). No such showing was made here concerning Ware's additional employment. *See Cybulski v. Cooper*, 891 F.Supp. 68 (D.Conn.1995). His primary employment as a firefighter continued, and the supplemental income he may have received from his other jobs does not constitute a protected property interest.

Courts in this circuit have differed in answering the question whether a suspension without pay comprises a cognizable property interest pursuant to the Fourteenth Amendment. The analyses are fact-specific, and no rule can be culled from the cases that have addressed, or made reference to, the issue. For example, although the Second Circuit in *Narumanchi* approved, in passing, the district court's finding that a two-week suspension without pay constituted a property interest, that determination was incidental to the case's holding that under the Collective Bargaining Agreement, the plaintiff received all the process that he was due. In *Kennedy v. City of New York*, 1995 WL 326563 (S.D.N.Y.1995), the plaintiff's indefinite suspension without pay was found to constitute a property interest.

*Larsen v. Lynch*, 1998 WL 229919 (D.Conn. March 31, 1998), best articulated the inconsistent treatment courts in this circuit have given the question of whether suspension without pay constituted a property interest under the Fourteenth Amendment:

> Neither the Supreme Court nor the Court of Appeals for the Second Circuit has directly addressed whether a five-day suspension without pay amounts to the requisite loss of a tangible property

interest, see *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 1811, 138 L.Ed.2d 120 (1997), and the issue has received inconsistent treatment in the federal courts, *Berardinelli v. Town of Newburgh*, 895 F.Supp. 56, 57 n. 3 (S.D.N.Y. 1995) (citing cases).

> However, the Second Circuit has been hesitant to expand the definition of 'property' within the context of the Fourteenth Amendment. See *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988) ("the course of the law in this Circuit has not moved beyond according procedural due process protection to interests other than those well within the contexts illustrated by *Goldberg* [*v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ] and *Roth*"). Moreover, in that case the court stated, in dicta, that a property interest arises in the employment context "only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause." *S & D Maintenance Co. Inc.*, 844 F.2d at 967. This view has been adopted by district courts in this circuit, which have refused to find that government employees subject to lesser disciplinary actions have been deprived of a constitutionally-protected entitlement.

*Larsen*, 1998 WL 229919 at *6.

Courts have found that both suspension with pay (*Weg v. Macchiarola*, 729 F.Supp. 328, 337–38 (S.D.N.Y.1990)), and suspension without pay (*Larsen*) do not implicate constitutionally cognizable property interests.

In addition, in *Perez v. City of New York*, 1997 WL 742536 (S.D.N.Y. Dec. 2, 1997), the court found "plaintiff has no protected interest in not being subject to disciplinary action." A civil servant does not have "a right to be free from transfer,

suspension, or other changes in work environment or status of the kind implicated by the pending disciplinary action against plaintiff." *Id.* at *2. In *Caniello v. City of New York,* 2001 WL 11061 (S.D.N.Y. Jan. 4, 2001), the court observed that "where an employee has retained his rank and base pay after an administrative action, courts have not found an unconstitutional deprivation of property." *Id.* at *1 (citations omitted).

It is also important to remember that Ware's complaint alleged loss of vacation time as an injury. The loss of vacation time is not a constitutionally cognizable injury, because the Policy at VI(E) provides that while an employee undergoes treatment, the employee "shall be required to utilize all paid leave credits (vacation, personal) before utilizing paid sick leave." Item 1, Ex. A, p. 10. This is a contractual, not a constitutional, issue, and "[c]ontract disputes, however, do not give rise to a cognizable claim under 42 U.S.C. § 1983." *Fitzgerald v. Feinberg,* 1999 WL 619584 at * 5 (S.D.N.Y. Aug. 16, 1999).

The court finds the *Larsen* analysis persuasive. Given that the plaintiff does not contend he lost remuneration because of the suspension (other than vacation time benefits), even if his suspension constituted a property interest, it would be "significantly less compelling than that of an individual who has been denied the very means by which to live." *Costello v. Town of Fairfield,* 811 F.2d 782, 786 (2d Cir. 1987). His status was not significantly altered. He was suspended briefly, and his full-time employment was not terminated. Not every "grievous loss visited upon a person by the state is sufficient to invoke the procedural protections of the due process clause," *Gendalia v. Gioffre,* 606 F.Supp. 363, 366 (S.D.N.Y.1985) (citation omitted). Consequently, the court holds that plaintiff has failed to state a claim under the Due Process Clause and section

1983; and therefore, the second cause of action must be dismissed.

## 2. Did Plaintiff Receive All the Process He was Due?

■ Acknowledging that the law is not settled that suspension without pay constitutes a property claim under the due process analysis, the court finds that even assuming that plaintiff's suspension amounted to deprivation of a constitutionally cognizable property right, the plaintiff would not be able to establish that he did not receive all the process he was due, and his claim would fail on that account.

■ Because plaintiff was not terminated but only suspended, courts have factored that salient point into the due process analysis. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Danese,* 827 F.Supp. at 193 (citation and quotation omitted). "Procedural due process requirements are generally satisfied by appropriate notice and an opportunity to be heard." *Adler v. County of Nassau,* 113 F.Supp.2d 423, 428 (E.D.N.Y.2000). A survey of cases from the Second Circuit, found in *Szoke v. Carter,* 165 F.R.D. 34 (S.D.N.Y.1996), reveals that

The Supreme Court has never held that a public employee, even one with tenure or its equivalent, has a right to a hearing prior to a suspension. In fact, the Court found that where termination is a possibility, employees are not entitled to a full evidentiary hearing but rather only a minimal pre-termination proceeding.

*Id.* at 37. See *Cybulski v. Cooper,* 891 F.Supp. 68 (D.Conn.1995).

In *Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities,* 64 F.3d 810 (2d Cir.1995), a state employee was suspended without pay. The Second Circuit affirmed the district court's finding that the employee "did not

have a claim for the deprivation of procedural due process because he was accorded a presuspension interview at which he was enabled to state his position regarding the suspension and the underlying charge . . . ." *Id.* at 816. Even a pre-*termination* hearing, "though necessary, need not be elaborate." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

■ Other courts have launched into the analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine whether the plaintiff was afforded all the process due.[1] Here, the employment interest involves temporary suspensions, not loss of a job; the risk of erroneous suspension is not great, considering the safeguards and possibilities to challenge the results written into the Drug Testing Policy; additional procedural safeguards do not appear to be necessary to comport with due process. Balancing Ware's interests in not being suspended against those of the government, the court concludes that the process followed was adequate to protect his procedural rights.

At the January 5, 1998 meeting, where Sixt met with Ware following the positive drug test, Ware had an opportunity to be heard. He denied ever using drugs, argued that the test result was a mistake, and pointed out that the urine sample had been too small to divide into two samples. Item 1, ¶ 30. A union representative was present at the meeting. *Id.,* ¶ 29. Although not a full-fledged hearing, this meeting comports with procedural due process guarantees, as confirmed by cases in this circuit. *See Narumanchi,* 850 F.2d at 72; *Szoke v. Carter,* 165 F.R.D. at 37.

Further, plaintiff has made no allegation in the complaint that there was any due process violation resulting from the Policy's inadequate or ineffective post-deprivation remedy.[2] And lastly, as *Narumanchi* holds, the grievance procedures set forth in the Policy and the Collective Bargaining Agreement provided, as a matter of law, all the process plaintiff was due. 850 F.2d at 72.

Therefore, even if the court assumed that plaintiff suffered a constitutionally cognizable property injury, it nevertheless finds that sufficient pre-disciplinary procedural safeguards existed and were used. Therefore, plaintiff's second cause of action does not state a claim upon which relief can be granted.

**B. The First and Third Causes of Action: Facial Challenges to the Policy**

Plaintiff's first cause of action charges that the Policy allows defendants to exer-

---

1. In making this determination, the court considers several factors, including: (1) the private interest to be affected by the official action; (2) the risk of an erroneous deprivation of a right; (3) the value of any additional or substitute procedural safeguards and (4) the Government's interests, including the function involved and the burden presented by the imposition of additional safeguards. *Mathews v. Eldridge,* 424 U.S. 319, 345, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

2. Defendants have noted that "firefighters in violation of the Drug Testing Policy may only be discharged after a hearing, and any violation by Defendants of the Drug Testing Policy is subject to the grievance and arbitration procedure. Terminations may be challenged in an Article 78 proceeding in state court." Item 20, ¶ 18. Plaintiff did not dispute that these remedies were available. Courts in this Circuit have also found that availability of Article 78 and/or grievance/arbitration proceedings comport with the requirements of post-deprivation due process. *See Fleming v. Kerlikowske,* 1999 WL 307696 (W.D.N.Y. May 7, 1999); *Ryan v. Carroll,* 67 F.Supp.2d 356, 361 (S.D.N.Y.1999); *Whiting v. Old Brookville,* 8 F.Supp.2d 202, 209–10 (E.D.N.Y. 1998); *Danese v. Knox,* 827 F.Supp. 185, 193 (S.D.N.Y.1993).

cise discretion without any guidance in disciplining plaintiff, provides for no effective appeal, and is "arbitrary and capricious and impermissibly vague on its face and violates the Due Process Clause of the Fourteenth Amendment ...." Item 1, ¶ 72. The third cause of action alleges "[i]nternal conflicts [3] in the Policy's confidentiality provisions cannot be reconciled and fail to sufficiently protect plaintiff's rights to privacy with respect to information about treatment he receives at the Beacon Center" in violation of the due process clause. *Id.*, ¶ 77. Both of these causes of action constitute facial challenges to the Policy as written, rather than as applied to Ware in his particular circumstances. The Policy was negotiated between the City of Buffalo and Local 282, Buffalo Professional Firefighters Association, and is considered part of the Collective Bargaining Agreement between the two entities. Item 1, Exh. A, VII, p. 11.

### 1. Standing and Waiver

■ The court has already held that the action should be dismissed because the union is a necessary party; but in addition, defendants argue that plaintiff lacks standing to sue because the Policy was negotiated and agreed to by the City of Buffalo and Local 282, the union which represents the firefighters. Item 21, pp. 2–3. As a result, the City argues that Ware did not have standing to sue since only the Union, as the sole bargaining representative of plaintiff and the other firefighters, may agree to the terms and conditions of the Policy which are contractually binding on all employees. In a later document, the City characterized the issue as one of waiver, where "New York law makes clear that the Plaintiff has waived his due process claims as a result of the Union's agreement to the terms of the Drug Testing Policy." Item 25, ¶ 6. It contends that

the waiver applies to both facial and as-applied challenges to the Policy. *Id.* Although the cases cited by defendants concern unions' waivers of their members' constitutional rights in their negotiations of collective bargaining agreements with the employers, the court will treat the issue as essentially one of standing. If the union acted as its employees' exclusive bargaining agent and, in so doing, waived certain of its members' rights, the members would have no standing to challenge the policy agreed to by the union as their representative.

Plaintiff, however, characterizes the issue as one of waiver: whether a union can waive certain constitutional rights of its members in negotiating a drug testing policy with a municipal employer. In support of its position, plaintiff cites *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), and other cases in its letter-argument. Item 29. *Wright* concerned whether the arbitration clause in a collective bargaining agreement required an employee to use the arbitration procedure for an alleged violation of the Americans with Disabilities Act, rather than adjudicating the claim in federal court. The Supreme Court held that a union could waive certain of its employee-members' statutory rights to a federal judicial forum, but that the waiver contained in the collective bargaining agreement must be "clear and unmistakable." 525 U.S. at 80, 119 S.Ct. 391. Plaintiff analogizes Buffalo's Drug Testing Policy to the Collective Bargaining Agreement in *Wright*, and argues that if the Policy does not explicitly waive statutory and constitutional protections, then there has been no waiver.

Defendants have the stronger argument. The Supreme Court has not spoken directly on the issue of whether a union may

---

**3.** The internal conflicts were not specified.

waive its members' constitutional rights. *Wright* did not address that issue, but rather discussed whether access to a federal forum had been waived by the terms of a collective bargaining agreement. In the case at bar, there was no serious objection by defendants as to whether Ware had waived his right to argue his case in federal court.[4]

■ Defendants cite *Bolden v. SEPTA*, 953 F.2d 807 (3d Cir.1991); *Dykes v. SEPTA*, 68 F.3d 1564 (3d Cir.1995); and New York federal and state case law for the proposition that a union, by virtue of its position as the exclusive collective bargaining representative for its employee-members, may, in its agreement with the employer, restrict constitutional rights that individual employees would otherwise enjoy. *Bolden*, 953 F.2d at 826. Both *Dykes* and *Bolden* concern Fourth Amendment search and seizure challenges to a negotiated drug testing policy. In *Bolden*, which addressed an employee's facial challenge to a drug testing policy, the court stated:

> A union such as Bolden's may validly consent to terms and conditions of employment, such as submission to drug testing, that implicate employees' Fourth Amendment rights . . . .
>
> [Under Pennsylvania law], a union is the exclusive collective bargaining representative for all of the employees in the unit, and therefore the union, in entering into a collective bargaining agreement, may agree to terms and conditions that are contractually binding on all of the employees . . . .

> . . . [A] union's authority as exclusive bargaining agent necessarily entails some restrictions on constitutional rights that individual employees would otherwise enjoy.

*Id.* at 826, 827.

The *Bolden* court went on to say:

> Through collective bargaining, a public employer and union can reach agreement on detailed factual questions . . . that may have important implications under the Fourth Amendment. If individual public employees may litigate such questions despite the resolution reached through collective bargaining, the utility of collective bargaining with respect to drug testing in the public sector would be greatly diminished. . . .
>
> . . . Individual employees are bound by such express consent.

*Id.* at 828.

Four years later, the *Dykes* court encountered an "as-applied" Fourth Amendment challenge to defendant's drug policy, and embraced the *Bolden* holding. The *Dykes* court underscored the importance accorded the terms of a collective bargaining agreement: "[E]ven where a drug testing policy has been held to be constitutionally infirm, a public employee may not pursue a civil rights suit based upon that infirmity where his union and his employer agree to operate under that policy." 68 F.3d at 1570.

For its part, the Second Circuit, in *Romano v. Canuteson*, 11 F.3d 1140 (2d Cir. 1993), has acknowledged that New York State law has long supported the proposition that "due process requirements are

---

4. A plaintiff bringing constitutional claims has other avenues to arrive in federal court. A plaintiff filing suit under 42 U.S.C. § 1983 is not required to have exhausted state administrative remedies. *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In *Narumanchi v. Board of Trustees*, 850 F.2d 70 (2d Cir.1988), the Second Circuit held that a plaintiff did not have to avail himself of the grievance procedures established in the collective bargaining agreement between his union and employer before bringing a Due Process claim in federal court. *Id.* at 72.

not of controlling relevance if the party seeking to assert them has waived them in a voluntary agreement such as a collective bargaining agreement." *Id.* at 1141. The *Romano* court pointed out that one district court case [5] "appears to cast doubt on this accepted state rule" but then cited other Second Circuit district court authority in support. *Id.* Subsequent cases in this circuit have cited *Romano* for the proposition that federal courts support such a waiver, leading this court to conclude that the legality of waiver is accepted jurisprudence. *See, Grandi v. New York City Transit Authority,* 977 F.Supp. 590, 595 (E.D.N.Y.1997); *Spencer v. New York City Transit Authority,* 1999 WL 51814 at * 10 (E.D.N.Y. Jan. 14, 1999); *Morris v. Lindau,* 196 F.3d 102, 115 (2d Cir.1999).

Given the analysis above, the court finds that plaintiff does not have standing to facially challenge the terms of the policy. "Plaintiff should raise any dissatisfaction with the agreement with his union, not with defendants." *Spencer v. NYC Transit Authority,* 1999 WL 51814 at *10 (E.D.N.Y. Jan. 14, 1999).

### 2. Plaintiff Does Not State a Valid Facial Challenge

Defendants also claim that plaintiff does not state a valid facial challenge to the Policy, and that the Policy is constitutionally valid on its face. Given the finding above, and noting that plaintiff does not counter this argument, this would provide yet another ground to dismiss the facial challenges to the Policy contained in the complaint.

### 3. Privacy Interests: The Third Cause of Action

■ The Fourteenth Amendment Due Process Clause does not protect privacy

interests, as propounded in the third cause of action. Thus, no claim is stated under this cause of action. Even if the court found that this claim, written somewhat ambiguously, was an "as applied" challenge, the complaint still fails to provide sufficient factual allegations in support, and in that context as well, it fails to state a cause of action. *See Greene v. Hawes,* 913 F.Supp. 136, 143 (N.D.N.Y.1996) ("Only when the complaint sets forth specific allegations of facts that indicate a deprivation of constitutional rights will it be permitted to survive a motion to dismiss.").

### IV. The Fourth and Fifth Causes of Action: Pendent State Claims

■ In his fourth cause of action, plaintiff alleges that the defendants have violated his right to privacy under the New York laws and Constitution by implementation and enforcement of the Policy. This cause of action can be read as a facial challenge to the Policy, which was dispensed with in section III(A) above.

The fifth cause of action alleges that defendants had actual and constructive notice that the Policy was unconstitutional, and by not adhering to its requirements, inflicted acute emotional trauma on Ware. This is essentially a state cause of action for intentional infliction of emotional distress.

Given that all of Ware's federal claims will be dismissed, this court will decline to exercise supplemental jurisdiction over his pendent state law claims. 28 U.S.C. § 1376(c)(3), *Tops Markets, Inc. v. Quality Markets, Inc.,* 142 F.3d 90, 102–03 (2d Cir.1998).

---

5. *Burka v. New York City Transit Auth.,* 744 F.Supp. 63 (S.D.N.Y.1990). The *Romano* court distinguished the holding in *Burka,* which did not involve suspension of employment, but discharge of several employees.

## CONCLUSION

For the reasons set forth above, the court grants defendants' motion to dismiss plaintiff's complaint for failure to state a cause of action.

So ordered.